IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2007 NOV 30 P 1:02
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

WASIF MONTE SABIR D/B/A GOLD VALLEY JEWELERS,

Plaintiff,

vs.

ADT SECURITY SERVICES, INC., A DELAWARE CORPORATION,

Defendant.

Civil Action No. 2:07cv1055-mef

**DEMAND FOR JURY TRIAL**

**ADT SECURITY SERVICES, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant ADT Security Services, Inc. ("ADT") files its Answer to Plaintiff's Complaint. Unless expressly admitted herein, Defendant ADT denies the material allegations of the Complaint and demands strict proof thereof. Defendant ADT responds to the numbered allegations of the Complaint as follows:

**PARTIES**

1. Defendant is without information and knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of Plaintiff's Complaint and therefore denies same.

2. Defendant admits that it is a Delaware corporation with its principal place of business at 1 Town Center Road, Boca Raton, FL 33486. Defendant denies the remaining allegations of paragraph 2 of Plaintiff's Complaint.

**FACTS**

3. Defendant is without information and knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of Plaintiff's Complaint and therefore denies same.

4. Defendant is without information and knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of Plaintiff's Complaint and therefore denies same.

5. Defendant is without information and knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of Plaintiff's Complaint and therefore denies same.

6. Defendant is without information and knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of Plaintiff's Complaint and therefore denies same.

7. Defendant is without information and knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of Plaintiff's Complaint and therefore denies same.

8. Defendant admits that Plaintiff had a contract for security services ("Agreement") with ADT Security Services, Inc. that provided for the monitoring of alarm equipment at its place of business and states that the terms of said Agreement speak for themselves. A copy of this Agreement is attached hereto as Exhibit A. Defendant denies the remaining allegations in Paragraph 8 of Plaintiff's Complaint.

9. Defendant is without information and knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of Plaintiff's Complaint and therefore denies same.

**COUNT I – NEGLIGENCE–WANTONNESS-FRAUD DEFENDANT ADT SECURITY SERVICES, INC.**

10. In response to paragraph 10 of Count I, Defendant ADT incorporates by reference its responses to the foregoing allegations of the Complaint as if set out here in full.

11. Denied.

12. Denied.

13. Denied.

19.(sic)Denied.

In response to the "WHEREFORE" clause following paragraph 19 (sic) of Count I of the Complaint, including each subpart thereof, Defendant ADT denies that Plaintiff is entitled to the relief sought or any relief whatsoever.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state a claim upon which relief can be granted against ADT.

**SECOND AFFIRMATIVE DEFENSE**

If Plaintiff sustained the damages at the time and place and in the manner alleged in the Complaint, such damages were caused in whole or in part by the Plaintiff's culpable conduct, including contributory negligence and/or assumption of the risk, and Plaintiff's recovery, if any, must be diminished in the proportion which the culpable conduct attributable to Plaintiff bears to the culpable conduct which caused the damages.

**THIRD AFFIRMATIVE DEFENSE**

If Plaintiff sustained the damages at the time and place and in the manner alleged in the Complaint, there was an intervening cause and/or causes leading to said alleged damages and, as such, any action on the part of ADT herein was not the proximate and/or competent producing cause of Plaintiff's alleged damages.

**FOURTH AFFIRMATIVE DEFENSE**

If Plaintiff sustained the damages at the time and place and in the manner alleged in the Complaint, such damages were caused in whole or in part by the conduct of one or more third persons for whose conduct ADT is not responsible or with whom ADT has no legal relation.

**FIFTH AFFIRMATIVE DEFENSE**

ADT is not liable to Plaintiff, as Plaintiff and ADT expressly agreed by contract that ADT would be exempt from all liability for any loss, damage or injury sustained by Plaintiff.

**SIXTH AFFIRMATIVE DEFENSE**

ADT's liability to Plaintiff, if any, is limited, as Wasif Monte Sabir d/b/a Gold Valley Jewelers and ADT expressly agreed by contract that ADT's liability for loss, damage or injury shall be limited to a sum equal to ten percent (10%) of the annual service charge or $1,000.00, whichever is greater.

**SEVENTH AFFIRMATIVE DEFENSE**

ADT offered Plaintiff the opportunity to have ADT assume a greater liability than the limitation of liability expressly set forth in Plaintiff's contract with ADT, but Plaintiff chose not to do so and, thus, Plaintiff assumed the risk of loss greater than the limitation expressly contained in its contract with ADT and/or Plaintiff waived any right to recover damages greater than the amount contractually limited and agreed upon and/or is estopped from seeking a recovery in excess thereof.

**EIGHTH AFFIRMATIVE DEFENSE**

To the extent that Plaintiff Wasif Monte Sabir d/b/a Gold Valley Jewelers is suing on behalf of its insurer pursuant to a claim of subrogation or by way of assignment, said insurer is the real party in interest and, under the parties' contract and/or principles of law, is not entitled to subrogation or assignment against ADT.

**NINTH AFFIRMATIVE DEFENSE**

In its contract with ADT, Wasif Monte Sabir d/b/a Gold Valley Jewelers expressly agreed that under no circumstances would ADT be liable for any incidental or consequential damages of any nature.

**TENTH AFFIRMATIVE DEFENSE**

To the extent that Plaintiff has assigned or subrogated its rights or claims, ADT's contractual defenses are applicable to Plaintiff's assignee or subrogee.

**ELEVENTH AFFIRMATIVE DEFENSE**

To the extent all or part of the damages alleged by Plaintiff in the Complaint were sustained by any person not a party to ADT's written contract with Plaintiff, ADT and Wasif Monte Sabir d/b/a Gold Valley Jewelers expressly agreed by contract that ADT is entitled to indemnification from Wasif Monte Sabir d/b/a Gold Valley Jewelers and for Wasif Monte Sabir d/b/a Gold Valley Jewelers to hold ADT harmless from any and all such damages, as well as all expenses, costs and attorneys' fees incurred by ADT in connection with such damages.

**TWELFTH AFFIRMATIVE DEFENSE**

Wasif Monte Sabir's d/b/a Gold Valley Jewelers contract with ADT is fully integrated and contains a merger clause which, by its terms, supersedes any prior agreements or understandings Plaintiff may have had with ADT.

**THIRTEENTH AFFIRMATIVE DEFENSE**

The economic loss doctrine applicable to products liability claims precludes Plaintiff from recovering economic damages.

**FOURTEENTH AFFIRMATIVE DEFENSE**

To the extent all or any part of the damages alleged by Plaintiff in the Complaint were sustained by any person not a party to ADT's written contract with Wasif Monte Sabir d/b/a Gold Valley Jewelers, such damages cannot be recovered from ADT since ADT owed no duty of care to any such person and Plaintiff's payment to any such person for such damages, if any, was made as a volunteer or otherwise, and without liability to ADT.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Defendant is not guilty of the matters and things alleged in the Complaint.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Defendant denies that it breached any contractual obligation owed to the Plaintiff.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

The alleged injuries to Plaintiffs were not proximately caused by any acts or omissions of Defendant.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Defendant avers that Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations, waiver, lack of reliance, contributory negligence, assumption of risk, failure to read, release and/or estoppel.

**NINETEENTH AFFIRMATIVE DEFENSE**

Defendant pleads that the transaction alleged was voluntarily undertaken, that the Plaintiff had the opportunity, if not the obligation, to read all documents presented to or signed by the Plaintiff, that the terms of the agreement were fully disclosed to the Plaintiff, that the

Plaintiff knowingly entered into the transaction, having either understood the transaction or having failed to avail Plaintiff of the opportunity to understand the transaction.

**TWENTIETH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the statute of frauds and/or parole evidence rule.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiff's alleged losses are subject to and barred by all of the terms and conditions of the Agreement made the basis of this lawsuit.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

Defendant denies that Plaintiff reasonably or justifiably relied upon any alleged misrepresentation or omission by Defendant or its agents, or that Plaintiff was damaged as the proximate result of any alleged misrepresentation or omission.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

The Complaint fails to allege a claim for which punitive damages can be recovered.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

Defendant cannot be held liable for punitive damages for intentional wrongful conduct or conduct involving malice based upon acts or omissions of any agent, employee or servant pursuant to Ala. Code § 6-11-27 (1993).

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

Ala. Code § 6-11-21 bars Plaintiff's claims for punitive damages to the extent that it exceeds the amount of $250,000, which the Alabama Legislature has established as the outer limit of reasonableness for awards of punitive damages as a matter of public policy in this state. The Alabama Supreme Court acted beyond its scope of authority and violated the separation of

powers clause of the United States Constitution and/or the Alabama Constitution in striking down this legislative mandate, and therefore, its action was unconstitutional and without effect. Allowing an award in excess of this legislative cap directly contravenes the express public policy of the State of Alabama.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

Alabama Act No. 99-358 bars Plaintiff's claims for punitive damages to the extent that those claims exceed the amount of $500,000, which the Alabama Legislature has established as the outer limit of reasonableness for awards of punitive damages as a matter of public policy in this state.

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims for punitive damages cannot be sustained because an award of punitive damages under Alabama law would violate Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the due process provisions of the Alabama Constitution.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff's claims for punitive damages cannot be sustained, because an award of punitive damages under Alabama law by a fact finder that (1) is not provided a standard sufficient for determining the appropriateness or the appropriate amount of a punitive damages award, (2) is not instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including the corporate status of a Defendant, (4) is permitted to award punitive damages under a standard for determining liability for punitive

damages that is vague and arbitrary as to damages permissible, and (5) is not subject to judicial review on the basis of objective standards, would violate Defendant's substantive and procedural due process and equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution and the Double Jeopardy Clause of the Fifth Amendment as incorporated into the Fourteenth Amendment, and by the Alabama constitutional provisions providing for due process, equal protection and the guarantee against double jeopardy.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

Plaintiff's claims for punitive damages cannot be sustained because an award of punitive damages under Alabama law without proof of every element beyond a reasonable doubt would violate Defendant's substantive and procedural due process rights under the due process provisions of the Alabama Constitution.

**THIRTIETH AFFIRMATIVE DEFENSE**

Any award of punitive damages based on anything other than Defendant's conduct in connection with the matters that are the subject of this lawsuit would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Double Jeopardy Clause of the Fifth Amendment as incorporated into the Fourteenth Amendment, and the Alabama constitutional provisions providing for due process and the guarantee against double jeopardy, because such an award in this case would not prevent Defendant from being subject to other judgments awarded with the goal of punishing Defendant for the same wrong. In effect, Defendant would receive multiple punishments for the same wrong.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

Any award of punitive damages in this case would violate Defendant's rights under the substantive and procedural Due Process Clause of the United States Constitution and

corresponding provisions of the Constitution of the State of Alabama, the Excessive Fines Clause of the Eighth Amendment to the United States Constitution, the contract clause of Article Two of the United States Constitution, and the Equal Protection Clause of the United States Constitution and corresponding provisions of the Constitution of the State of Alabama.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

The Alabama punitive damage system, on its face and as applied, violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. While the Supreme Court of the United States perceived the system as constitutional in Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1 (1991), events subsequent to Haslip have shown that the system is wholly arbitrary, fundamentally unfair and utterly irrational in violation of due process. See Armstrong v. Roger's Outdoor Sports, Inc., 581 So. 2d 414, 423 (Ala. 1991) (Maddox, J., dissenting); Henderson v. Alabama Power Co., 627 So. 2d 878, 894-95 (Ala. 1993) (Maddox, J., dissenting); Id. at 914 (Houston, J., dissenting). The Alabama system affords juries standardless discretion to impose unlimited punishment and review of such awards is constitutionally deficient. See Honda Motor Co., Ltd. v. Oberg, 114 S. Ct. 2331 (1994). Alabama post-verdict review is neither meaningful, consistent, nor constitutionally adequate to cure this crucial constitutional defect.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

The Alabama punitive damage system, on its face and as applied, violates the Due Process Clause of the Fourteenth Amendment because there are absolutely no meaningful standards or limits for determining the amount of the award, contravening the deeply rooted American tradition that punishment may not be imposed in the absence of a pre-existing, express range of penalties established by the legislature.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

The imposition of a punitive damage award in this case in the absence of explicit, particularized guidelines or standards is highly unfair and constitutionally infirm because an award made in the absence of such guidelines or standards may be grossly excessive, disproportionate, arbitrary and irrational. A punitive damage award in the absence of such guidelines or standards will bear no rational or reasonable relationship to Defendant's alleged conduct in this matter or to any alleged harm to Plaintiff and will dwarf legislatively established fines for comparable conduct. A punitive damage award in the absence of such guidelines or standards therefore will violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and the excessive fines clause of the Alabama Constitution, Ala. Const. Art, I, § 15.

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

Without the protections of Ala. Code §§ 6-11-23(a) and 6-11-24 regarding punitive damage awards, now declared unconstitutional by the Alabama Supreme Court, the State of Alabama no longer affords to a Defendant sufficient protection under the United States Constitution from excessive and arbitrary punitive damage awards.

**THIRTY-SIXTH AFFIRMATIVE DEFENSE**

A punitive damage award in this case will violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Commerce Clause, the Equal Protection Clause and the Privileges and Immunities Clause because the award would be based upon an Alabama state enforced policy that unconstitutionally discriminates against a Defendant in punitive damages cases based upon Defendant's status as an out-of-state, corporate entity.

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

The imposition of punitive damages in this case based upon theories of respondeat superior, agency, vicarious liability or joint and several liability violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff's claims for punitive damages against Defendant cannot be sustained, because any such award of damages under Alabama law exceeding the limits authorized by the Alabama Criminal Code would constitute an excessive fine and cruel and unusual punishment in violation of the Fourteenth Amendment to the United States Constitution, the Eighth Amendment as incorporated into the Fourteenth Amendment and the Alabama constitutional provisions providing for due process and protection against excessive fines and cruel and unusual punishment.

**THIRTY-NINTH AFFIRMATIVE DEFENSE**

Any award of punitive damages based on anything other than Defendant's conduct, if any, in connection with the sale of the specific product or handling of said claim that is the subject of this case, as opposed to conduct outside the State of Alabama, would violate the Due Process and Equal Protection Clauses of the United States Constitution and the Alabama Constitution and the double jeopardy clause of the Fifth Amendment as incorporated into the Fourteenth Amendment and the Alabama constitutional provisions providing for due process and the guarantee against double jeopardy, because any other judgment for damages in this case cannot protect Defendant against impermissible multiple punishment for the same wrong. See Gore v. BMW of North America, Inc., 116 S.Ct. 1509 (1996).

**FORTIETH AFFIRMATIVE DEFENSE**

Plaintiff's demand for punitive damages is unconstitutional and violates Defendant's right to due process guaranteed by the Fifth Amendment and the Fourteenth Amendment of the United States Constitution and Article I, Section 6, of the Alabama Constitution, because the fact finder is not authorized to apportion damages separately and severally against joint tortfeasors.

**FORTY-FIRST AFFIRMATIVE DEFENSE**

Any award of punitive damages to Plaintiff in this case is prohibited by the Due Process Clause of the Fourteenth Amendment until Defendant has first been provided with "an opportunity to present every available defense." *Philip Morris v. Williams*, 127 S.Ct. 1057, 1063 (2007) (quoting *Lindsey v. Normet*, 405 U.S. 56, 66 (1972)).

**FORTY-SECOND AFFIRMATIVE DEFENSE**

Any claim for punitive damages, on its face and/or as applied in this case, is improper because the State lacks proper standards to "cabin the jury's discretionary authority." Thus, the punitive damage system in place in this State deprives Defendant of "fair notice . . . of the severity of the penalty that [could be] impose[d]," and subjects Defendant to an "arbitrary punishment" that did not reflect an "application of law" but rather "a decision maker's caprice." *Philip Morris v. Williams*, 127 S.Ct. 1057, 1062 (2007) (citations omitted).

**FORTY-THIRD AFFIRMATIVE DEFENSE**

Any claim for punitive damages, on its face and/or as applied in this case, is improper because the State's law does not provide the appropriate standards for the imposition of punitive damages. Thus, the State's procedure for awarding punitive damages unnecessarily deprives juries of proper legal guidance and subjects Defendant to arbitrariness and inadequate notice. "[G]iven the risks of arbitrariness, inadequate notice, and imposing one State's policies on other

States, it is particularly important that States avoid procedure that unnecessarily deprives juries of proper legal guidance." *Philip Morris v. Williams*, 127 S.Ct. 1057, 1059 (2007) (citations omitted).

ADT reserves the right to assert any additional defenses as may become available through investigation and discovery and to adopt and assert any defenses raised or asserted by any other defendant, if any, to this action.

**JURY DEMAND**

Defendant ADT hereby demands a trial by jury on all issues raised in the Complaint.

**DEMAND FOR STATEMENT OF DAMAGES**

ADT hereby requests that Plaintiff furnish a written statement of the amount of damages claimed within ten (10) days.

John A. Earnhardt
Robert H. Fowlkes
Attorney for ADT Security Services, Inc.

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2602
(205) 254-1000

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document has been served via US Mail properly addressed this 30th day of November, 2007:

Jim L. Debardelaben, Esq.
Attorney at Law
P.O. Box 152
Montgomery, Alabama 361010-0152
ATTORNEY FOR PLAINTIFF

Of Counsel

01571212.1

# Exhibit A

318

ADT
ADT Security Services, Inc.

Relocation "Existing ADT Customer" National Account

# COMMERCIAL SALES PROPOSAL/AGREEMENT

DATE 10/28/99

ADT Security Services, Inc. ("ADT")
501 Adams Avenue
Montgomery, AL 36104
Tel. No. (334) 834-4109

To: (Customer Name and Address)
Gold Valley
1003 B Eastdale Mall
Montgomery, AL 36117
Attn: Monte Sapir Tel. No. (334) 279-7564

ADT proposes to install or cause to be installed the equipment and furnish the services indicated herein:

| QTY | DEVICE DESCRIPTION | ZONE | DEVICE LOCATION |
|---|---|---|---|
| 1 | Control Panel | | |
| 1 | Keypad | | |
| 1 | Motion Sensor | | Counter (Behind) |
| 1 | Motion Sensor | | Counter Area (Front) |
| 1 | Door Contact | | Far Right Rollup |
| 1 | Door Contact | | Front Middle Rollup |
| 1 | Door Contact | | Far Left Rollup |
| 1 | Door Contact | | Back Door |
| 1 | Inside Siren | | |
| 1 | Telco Jack | | |
| | | | |
| | | | |
| | | | Bill to: |
| | | | Address Above |
| | | | |
| | | | |
| | | | |

**Type of Transaction**

☐ Direct Sale (equipment to become property of the Customer upon payment of Selling Price indicated below in full).

☑ System to remain property of ADT.

ADT may remove or upon written notice to the Customer, abandon in whole or in part, all devices, instruments, appliances, cabinets, and other materials associated with the system, upon termination of this agreement, without obligation to repair or redecorate any portion of the Customer's premises upon such removal, and the removal or abandonment of such materials shall not be held to constitute a waiver of the right of ADT to collect any charges which have been accrued or may be accrued hereunder.

**Services To Be Provided** — P - Provided, NP - Not Provided (Circle One)

Central Station Signal Receiving and Notification Service P NP
☐ Fire Alarm ☐ Hold Up Alarm
☐ Burglar Alarm ☐ Duress
☐ Supervisory ☐ Other ______

Direct Connection Service P NP
To ______

Using:
☐ Digital Communicator
☐ Leased Line
☐ Derived Local Channel

☐ Telephone Charges Not Included in ADT Billing

Maintenance (P) NP
Inspections P (NP)
Number per Year ______
Investigator Response P (NP)
☐ Interior ☐ Exterior
Supervised/Scheduled Opening/Closing P (NP)
Opening/Closing Logging P (NP)
Opening/Closing Reports P (NP)
Other ______ P (NP)

If the Familiarization Period is accepted, Customer, please initial here. [ ]

If Maintenance Service is declined, Customer, please initial here. [ ]

Customer acknowledges that: (a) ADT has explained the full range of protection, equipment, and services available to Customer; (b) additional protection over and above that provided herein is available and may be obtained from ADT at an additional cost to the Customer; and (c) Customer desires and has contracted for only the equipment and services itemized on this Agreement.

For the sum of $ 110.00 payable ______ upon acceptance of this proposal and the balance payable upon completion of the installation and as a precondition to activation of the system and, if applicable, connection to central station or direct connection service. In addition, for the service(s) to be provided as indicated above, Customer agrees to pay $ 353.00 payable $29.81 Monthly per annum, annually in advance for a period of five years effective from the date service is operative under this agreement. After the five years, this agreement shall be automatically renewable yearly unless terminated by either party upon written notice at least 30 days prior to the anniversary date.

ADT shall have the right to increase the annual service charge after 1 year.

In the event of termination prior to the end of the contract term, the Customer agrees to pay, in addition to any changes for services rendered prior to termination, 90% of the service charge remaining to be paid for the unexpired term of the agreement as liquidated damages (but not as a penalty).

The Customer agrees to pay, in addition to the service charges above, any false alarm assessments, taxes, fees or charges that are imposed by any governmental body, telephone or signal transmission company (for numbering or other changes) or costs of ADT related to reprogramming alarm controls and other devices to comply with such numbering or other changes relating to the installation or service provided under this Agreement and to pay any increase in charges to ADT for facilities required for transmission of signals under this Agreement.

In the event ADT's representative is sent to the Customer's premises in response to a service call or alarm signal caused by the Customer improperly following operating instructions or, failing to close or properly secure a window, door or other protected point, or improperly adjusting monitors or accessory components, there shall be a service charge to the Customer.

Failure to pay amounts when due shall give ADT, in addition to any other remedies, the right to terminate this Agreement and to charge interest at the highest legal rate on the delinquent amounts. Customer agrees to pay all costs, expenses and fees of ADT's enforcement of this Agreement, including collection expenses, court costs, and attorneys' fees. Any installation charge quoted in this agreement is based on ADT performing the installation with its own personnel. If for any reason this installation must be performed by outside Contractors, said installation charge shall be subject to revision.

**This Agreement is not binding unless approved in writing by an authorized Representative of ADT. In the event of failure of such approval, the only liability of ADT shall be return to the Customer the amount, if any, paid to ADT upon signing of this Agreement.**

Customer warrants that the Customer: (1) has requested the equipment/services specified in this Agreement for its own use and not for the benefit of any third party, (2) owns the premises in which the equipment is being installed or that Customer has the authority to engage ADT to carry out the installation in the premises and (3) will comply with all laws, codes, and regulations pertaining to the use of the equipment/services.

**Customer Acceptance**

In accepting this Proposal, Customer agrees to the terms and conditions contained herein including those on the reverse side. It is understood that they shall prevail over any variation in terms and conditions on any purchase order or other document that the Customer may issue. Any changes in the system requested by the Customer after the execution of this Agreement shall be paid for by the Customer and such changes shall be authorized in writing.

**ATTENTION IS DIRECTED TO WARRANTY, LIMIT OF LIABILITY AND OTHER CONDITIONS ON REVERSE SIDE.**

By ______ Agent

Approved ______ Authorized Representative of ADT

Signature [signature]

Title [illegible] Date 10/28/99

Form 3061-01 (9/97)

LOCAL OFFICE FILE

# TERMS AND CONDITIONS

A. Signal Receiving and Notification Service shall be provided by ADT if the reverse side of this Agreement includes a charge for Signal Receiving and Notification Service and in the event an alarm signal registers at ADT's Central Station, ADT shall endeavor to notify the appropriate Police or Fire Department and the designated representative of the Customer. In the event a burglar alarm signal or fire signal registers at ADT's Central Station, ADT at its sole discretion may endeavor to contact the Customer's premises by telephone to verify that the alarm is not false. Failing to contact the Customer promptly or questioning the nature of the response received upon such contact, ADT shall endeavor to notify the appropriate Police Department or Fire Department. In the event a supervisory signal or trouble signal registers at ADT's Central Station, ADT shall endeavor to notify promptly the designated representative of the Customer.

In the event ALARM VERIFICATION SERVICE is being furnished, it is mutually understood and agreed that equipment is being installed which, as to certain locations in the premises, will require the activation of two sensing devices, or a second activation of a single alarm sensor, or a continuous alarm event from a single sensor, in order for an alarm signal to be transmitted.

It is mutually agreed that the Customer assumes full responsibility for the operation of any and all bypass or switch units provided for disconnecting or reconnecting the alarm sounding and/or transmitting equipment at Customer's premises.

The Customer represents that any vault to be protected by ADT hereunder by sound or vibration detector systems has the minimum construction characteristics prescribed by the Underwriters' Laboratories, Inc.

The Customer agrees to test any ultrasonic, microwave, capacitance or other electronic equipment designated on the Schedule of Protection prior to setting the alarm system for closed periods, according to procedures prescribed by ADT, and to notify ADT promptly in the event that such equipment fails to respond to the test.

If Customer has agreed on the reverse side to a 5 day Familiarization Period following completion of installation, and if needed an extension period, for Customer to become familiar with the system operation, then during this Familiarization Period Customer agrees that in the event any signal (including an alarm signal) of any nature registers at ADT's central station, ADT shall not respond to any signals, endeavor to notify the authorities, Customer or Customer's designated representative, or undertake any other action with regard to any signal, whether or not due to an actual emergency event.

Communication Facilities - A. AUTHORIZATION - Customer authorizes ADT to make requests for information, service, orders or equipment in any respect on behalf of Customer to a telephone company (the "Telephone Company") or other entity providing facilities or services for transmission of signals under this Agreement. B. DIGITAL COMMUNICATOR - If connection to the ADT Central Station is to be by Digital Communicator, the Customer agrees to provide a connection via a registered telephone jack to a telephone channel required for the ADT equipment. Such connection shall be electrically first before any other telephone or Customer equipment, and shall be within 10 feet of the ADT Control Panel. If requested by the Customer, ADT shall provide such connection at the cost of the Customer. The Customer understands that if a digital communicator is installed under this Agreement, it uses standard telephone lines as the transmission mode of sending signals and eliminates the need for dedicated telephone facilities and the large cost increases frequently imposed on such facilities. **Customer also understands that ADT does not receive signals when the transmission mode is or becomes non-operational and that signals from the digital communicator cannot be received if the transmission mode is cut, interfered with or otherwise damaged.** C. DERIVED LOCAL CHANNEL - The facilities and services provided by the Telephone Company, in connection with the services to be provided to the Customer hereunder, include what is generally described as Derived Local Channel service (and which may be provided under specific service marks or service names of individual Telephone Companies). Those facilities and services relate to the provision of lines, signal paths, scanning and transmission. The Customer agrees that the liability of the Telephone Company is limited in accordance with, and the Telephone Company may invoke, the provisions of Paragraph E of this Agreement. D. RADIO INTERFACE - If connection to the ADT Central Station is to be by any radio frequency method, such as cellular or private radio, then customer understands due to the very nature of radio waves that there may be times when the system is unable to secure, maintain or retransmit an alarm signal and, thus, the utilization of an additional communications means is recommended.

B. **Warranty.** If direct sale is indicated on the reverse side, any part of the system, including the wiring, installed under this Agreement which proves to be defective in material or workmanship within ninety (90) days of the date of completion of installation will be repaired or replaced at ADT's option with a new or functionally operative part. Labor and material required to repair or replace such defective components will be free of charge for a period of ninety (90) days following the completion of the original installation.

This Warranty does not apply to the conditions listed below and in the event Customer calls ADT for service under the Warranty and upon inspection by ADT's representative it is found that one of these conditions has led to the inoperability or apparent inoperability of the system, a charge will be made for the service call of ADT's representative whether or not he actually works on the system. Should it actually be necessary to make repairs to the system due to one of the "Conditions" not covered by Warranty, a charge will be made for such work at ADT's then applicable rates for labor and material. Service will be furnished by ADT during ADT's normal working hours of 8:00 A.M. to 4:30 P.M., Monday through Friday, except holidays.

Conditions not covered by Warranty: A) Damage resulting from accidents, acts of God, alteration, misuse, tampering or abuse. B) Failure of the Customer to properly follow operating instructions provided by ADT at time of installation or at a later date. C) Adjustments necessitated by misalignment of CCTV cameras, improper adjustment of monitor brightness and contrast tuning dials or insufficient light on the area viewed by the camera(s). D) Trouble due to interruption of commercial power or to the phone service.

**THE FOREGOING WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. THE PURCHASER'S EXCLUSIVE REMEDY WITH RESPECT TO ANY AND ALL LOSSES OR DAMAGES RESULTING FROM ANY CAUSE WHATSOEVER, INCLUDING ADT'S NEGLIGENCE, SHALL BE REPAIR OR REPLACEMENT AS SPECIFIED ABOVE. ADT SHALL IN NO EVENT BE LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES OF ANY NATURE, INCLUDING WITHOUT LIMITATION, DAMAGES FOR PERSONAL INJURY OR DAMAGES TO PROPERTY, AND HOWEVER OCCASIONED, WHETHER ALLEGED AS RESULTING FROM BREACH OF WARRANTY OR CONTRACT BY ADT OR NEGLIGENCE OF ADT OR OTHERWISE.**

C. **Maintenance** — If the reverse side of this agreement indicates this service is being provided, ADT will, upon Customer's request, provide ordinary maintenance and repair of such system due to normal wear and tear and bear the expense thereof. The expense of all extraordinary maintenance and repair due to alterations in the Customer's premises, alterations of the system made at the request of the Customer, or made necessary by changes in the Customer's premises, damage to the premises or to the alarm system, or to any cause beyond the control of ADT, shall be borne by the Customer. The Customer agrees to furnish any necessary electric current through the Customer's meter and at the Customer's own expense with an outlet within 10 feet of the ADT Control Panel. It is mutually agreed that the work of installation and ADT's repairs of the system shall be performed between ADT's normal working hours of 8:00 A.M. to 4:30 P.M., Monday through Friday, except holidays.

EXCLUSIONS: Maintenance on the following devices will be provided only on a time and material basis: (1) window foil, (2) security screens, (3) any exterior mounted devices, (4) PROM (Programmable Read Only Memory), (5) Conditions not covered by warranty listed above in paragraph B.

It is understood and agreed that ADT's obligation relates to the maintenance solely of the specific protection system, and that ADT is in no way obligated to maintain, repair, service, replace, operate or assure the operation of any device or devices of the Customer or of others not installed by ADT.

If not contracted for before the expiration of the Warranty, ADT will enter into a Maintenance Service Contract only after inspecting the system and making any necessary repairs or replacements to the system at a charge to the Customer for labor and/or material at ADT's then prevailing rates.

**INSPECTIONS — ADT will provide the number of inspections of the Alarm system only as specified on the reverse side of this Agreement between ADT's normal working hours of 8:00 A.M. to 4:30 P.M., Monday through Friday, except holidays and subject to the exclusions set forth above for maintenance.**

D. IF INVESTIGATOR RESPONSE SERVICE is being furnished as indicated on the reverse side, the levels available are as follows:

**Level I—Exterior Investigation:** Upon receipt of a burglar alarm signal from the Customer's premises, ADT, in addition to notifying the Police Department as indicated above, will endeavor to notify the Customer's designated representative and also endeavor to dispatch a representative to the Customer's premises. The representative will make an investigation of the exterior of the premises from his vehicle. At the conclusion of the representative's investigation, ADT will notify the Customer's designated representative of the results of the investigation.

**Level II—Interior Investigation:** Upon receipt of a burglar alarm signal from the Customer's premises, ADT, in addition to notifying the police department as indicated above, will endeavor to dispatch a representative. The representative will conduct an exterior investigation and then enter the Customer's premises with keys which must be provided by the Customer and make an interior investigation. However, if there is evidence of an attack, the ADT representative will terminate his investigation until the police arrive. The Customer's representative will then be notified if there has been an attack. Otherwise a notice of the alarm will be left at the control unit.

For either level of investigation, the Customer authorizes and directs ADT to cause the arrest of any person or persons unauthorized to enter his premises and to hold him or them until released by the Customer or an authorized known representative, and in such cases to indemnify ADT against any liability, cost or expense in consequence of such arrest.

If the Customer requests that the ADT Representative remain at the premises pending Customer's arrival, and ADT agrees to comply, the Customer will be charged at ADT's then prevailing rate for labor.

**E. IT IS UNDERSTOOD THAT ADT IS NOT AN INSURER, THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO ADT HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES AND THE SCOPE OF LIABILITY AS HEREIN SET FORTH AND ARE UNRELATED TO THE VALUE OF THE CUSTOMER'S PROPERTY OR PROPERTY OF OTHERS LOCATED IN CUSTOMER'S PREMISES. CUSTOMER AGREES TO LOOK EXCLUSIVELY TO CUSTOMER'S INSURER TO RECOVER FOR INJURIES OR DAMAGE IN THE EVENT OF ANY LOSS OR INJURY AND RELEASES AND WAIVES ALL RIGHT OF RECOVERY AGAINST ADT ARISING BY WAY OF SUBROGATION. ADT MAKES NO GUARANTY OR WARRANTY, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS, THAT THE SYSTEM OR SERVICES SUPPLIED, WILL AVERT OR PREVENT OCCURRENCES OR THE CONSEQUENCES THEREFROM, WHICH THE SYSTEM OR SERVICE IS DESIGNED TO DETECT. IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX THE ACTUAL DAMAGES, IF ANY, WHICH MAY PROXIMATELY RESULT FROM FAILURE ON THE PART OF ADT TO PERFORM ANY OF ITS OBLIGATIONS HEREUNDER. THE CUSTOMER DOES NOT DESIRE THIS CONTRACT TO PROVIDE FOR FULL LIABILITY OF ADT AND AGREES THAT ADT SHALL BE EXEMPT FROM LIABILITY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO OCCURRENCES, OR CONSEQUENCES THEREFROM, WHICH THE SERVICE OR SYSTEM IS DESIGNED TO DETECT OR AVERT; THAT IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1,000, WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY; AND THAT THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY IF LOSS, DAMAGE OR INJURY, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY TO PERSON OR PROPERTY FROM PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS IMPOSED BY THIS CONTRACT OR FROM NEGLIGENCE, ACTIVE OR OTHERWISE, STRICT LIABILITY, VIOLATION OF ANY APPLICABLE CONSUMER PROTECTION LAW OR ANY OTHER ALLEGED FAULT ON THE PART OF ADT, ITS AGENTS OR EMPLOYEES. NO SUIT OR ACTION SHALL BE BROUGHT AGAINST ADT MORE THAN ONE (1) YEAR AFTER THE ACCRUAL OF THE CAUSE OF ACTION THEREFOR. IT IS FURTHER AGREED THAT THE LIMITATIONS ON LIABILITY EXPRESSED HEREIN SHALL INURE TO THE BENEFIT OF AND APPLY TO ALL PARENTS (BOTH DIRECT AND INDIRECT), SUBSIDIARIES AND AFFILIATES OF ADT. IF THE CUSTOMER DESIRES ADT TO ASSUME A GREATER LIABILITY, ADT SHALL AMEND THIS AGREEMENT BY ATTACHING A RIDER SETTING FORTH THE AMOUNT OF ADDITIONAL LIABILITY AND THE ADDITIONAL AMOUNT PAYABLE BY THE CUSTOMER FOR THE ASSUMPTION BY ADT OF SUCH GREATER LIABILITY PROVIDED, HOWEVER, THAT SUCH RIDER AND ADDITIONAL OBLIGATION SHALL IN NO WAY BE INTERPRETED TO HOLD ADT AS AN INSURER. IN THE EVENT ANY PERSON, NOT A PARTY TO THIS AGREEMENT, SHALL MAKE ANY CLAIM OR FILE ANY LAWSUIT AGAINST ADT IN ANY WAY RELATING TO THE EQUIPMENT OR SERVICES THAT ARE THE SUBJECTS OF THIS AGREEMENT, INCLUDING FOR FAILURE OF ITS EQUIPMENT OR SERVICE IN ANY RESPECT, CUSTOMER AGREES TO INDEMNIFY AND HOLD ADT HARMLESS FROM ANY AND ALL SUCH CLAIMS AND LAWSUITS INCLUDING THE PAYMENT OF ALL DAMAGES, EXPENSES, COSTS AND ATTORNEYS' FEES. IF THIS AGREEMENT PROVIDES FOR A DIRECT CONNECTION TO A MUNICIPAL POLICE OR FIRE DEPARTMENT OR OTHER ORGANIZATION, THAT DEPARTMENT OR OTHER ORGANIZATION MAY INVOKE THE PROVISIONS HEREOF AGAINST ANY CLAIMS BY THE CUSTOMER DUE TO ANY FAILURE OF SUCH DEPARTMENT OR ORGANIZATION.**

F. In the event INTRUSION DETECTION SERVICE or WATCHMAN'S REPORTING SERVICE is furnished under this Agreement, the service will be provided in accordance with ADT's FORM NUMBER 837 or 839, which shall be attached to and made a part of this Agreement.

G. IF CCTV EQUIPMENT IS INVOLVED, Customer will provide adequate illumination under all operational conditions for the proper operation of the closed circuit television camera and will provide the 110 AC power supply where required as well as shelf or desk space for monitors.

H. A Direct Connection to the Municipal Police, Fire Department or other Agency shown shall be provided if the reverse side of this Agreement provides for such direct connect service.

It is mutually understood and agreed that signals transmitted hereunder will be monitored in Municipal Police and/or Fire Departments or other location and that the personnel of such Municipal Police and/or Fire Departments or other location are not the agents of ADT nor does ADT assume any responsibility for the manner in which such signals are monitored or the response, if any, to such signals.

I. At ADT's option, the Customer may be charged for any false alarm caused by the Customer or for any unnecessary service run [illegible]

J. CANCELLATION — If Central Station or Direct Connection is furnished, this Agreement may be terminated at the option of ADT if ADT's Central Station is substantially damaged by fire or catastrophe or ADT is unable to have connections or privileges necessary to transmit signals between the Customer's premises, ADT's Central Station or the Municipal Fire or Police Department or other agency and ADT shall not be liable for any damages or subject to any penalty as a result of such termination.

It is understood and agreed that this Agreement may be terminated by ADT in the event that the Customer fails to follow any recommendations ADT may make for the repair or replacement of defective parts of the system not covered under the Warranty or Maintenance Service Contract, or in the event that the Customer's failure to follow the operating instructions provided by ADT results in an inordinate number of false alarms or if the premises in which the system is installed are so modified or altered after installation as to render continuation of service impractical.

**K. ADT ASSUMES NO LIABILITY FOR DELAYS IN INSTALLATION OF THE EQUIPMENT OR FOR THE CONSEQUENCES THEREFROM, HOWEVER CAUSED, OR FOR INTERRUPTIONS OF SERVICE OR FOR THE CONSEQUENCES THEREFROM DUE TO STRIKES, RIOTS, FLOODS, ACTS OF GOD OR ANY CAUSES BEYOND THE CONTROL OF ADT, AND WILL NOT BE REQUIRED TO SUPPLY SERVICE TO THE CUSTOMER WHILE INTERRUPTION OF SERVICE DUE TO ANY SUCH CAUSE SHALL CONTINUE.**

L. This Agreement is not assignable by the Customer except upon written consent of ADT first being obtained. ADT shall have the right to assign this agreement or to subcontract any of its obligations under this agreement without notice to Customer.

M. If any of the provisions of this agreement shall be determined to be invalid or unenforceable, the remaining provisions shall remain in full force and effect.

**N. THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE CUSTOMER AND ADT. IN EXECUTING THIS AGREEMENT, CUSTOMER IS NOT RELYING ON ANY ADVICE OR ADVERTISEMENT OF ADT. CUSTOMER AGREES THAT ANY REPRESENTATION, PROMISE, CONDITION, INDUCEMENT OR WARRANTY, EXPRESS OR IMPLIED, NOT INCLUDED IN WRITING IN THIS AGREEMENT SHALL NOT BE BINDING UPON ANY PARTY, AND THAT THE TERMS AND CONDITIONS HEREOF APPLY AS PRINTED WITHOUT ALTERATION OR QUALIFICATION, EXCEPT AS SPECIFICALLY MODIFIED IN WRITING. THE TERMS AND CONDITIONS OF THIS AGREEMENT SHALL GOVERN NOTWITHSTANDING ANY INCONSISTENT OR ADDITIONAL TERMS AND CONDITIONS OF ANY PURCHASE ORDER OR OTHER DOCUMENT SUBMITTED BY THE CUSTOMER.**

[illegible] ADT Security Services