**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA** RECEIVED
**NORTHERN DIVISION**

2007 NOV 30  P 1: 03

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

| | | |
|---|---|---|
| WASIF MONTE SABIR D/B/A GOLD VALLEY JEWELERS, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Civil Action No. 2:07CV1055 -mef |
| ADT SECURITY SERVICES, INC., A DELAWARE CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT ADT SECURITY SERVICES, INC.'S BRIEF IN SUPPORT OF
ITS MOTION FOR JUDGMENT ON THE PLEADINGS & ALTERNATIVELY
MOTION TO DISMISS OR MOTION FOR MORE DEFINITE STATEMENT**

Defendant ADT Security Services, Inc. ("ADT"), pursuant to FED. R. CIV. P. 12(c)

hereby moves the Court to enter an Order granting a Judgment on the Pleadings in its favor in the

above-styled matter. Even accepting as true the factual averments in Plaintiff's Complaint[1], a

judgment in ADT's favor is appropriate because: (1) Plaintiff's Complaint, sounding entirely in

tort, is deficient as a matter of law because Plaintiff's tort claims are not based on a duty

independent of the contract between ADT and Plaintiff; (2) Plaintiff's claims are barred by the

unambiguous limitation of liability provisions in the contract[2]; and (3) the allegations in Count I

---

[1]  For purposes of this Motion for Judgment on the Pleadings, defendant does not dispute
plaintiff's version of facts, but that does not mean that defendant agrees with them.

[2]  Since Plaintiff referred to the Contract in the complaint, they may be considered as part
of a motion for judgment on the pleadings (or motion to dismiss) without converting the
motion to a summary judgment motion. Rule 10(c) Ala. R. Civ. P.; *Wilson v. First Union
National Bank of Georgia*, 716 So. 2d 722, 726 (Ala. Civ. App. 1998) (affirming trial
court's order granting a motion to dismiss that attached a document referenced in the
complaint and following the holdings of a "number of federal appellate courts" that if a
document is referred to in the complaint, a defendant may submit a copy to the court to
be considered on a motion to dismiss); *(Brooks v. Blue Cross and Blue Shield of Florida,
Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("Where the plaintiff refers to certain

of Plaintiff's Complaint do not state a plausible claim of willful and wanton negligence and/or fraud, thus are deficient as a matter of law. Alternatively, to the extent Count I of Plaintiff's Complaint purports to assert a fraud claim, it is deficient under FED. R. CIV. P. 9(b) and is due to be dismissed. At a minimum, even if this Court does not dismiss this fraud claim, the Court should require the Plaintiff to plead this claim with more particularity as required by the Federal Rules of Civil Procedure.

This action arises from an alleged break in and robbery at Plaintiff's jewelry business located at Gold Valley, 1003 B. Eastdale Mall, Montgomery, Alabama. The Plaintiff does not, and cannot, allege that ADT caused the break in and robbery. Rather, Plaintiff appears to contend that the alarm system at his jewelry store was negligently installed or maintained, and that an alarm system meeting contractual expectations would have prevented the crime causing the loss. Plaintiff now seeks to hold ADT fully liable for the act of an unknown criminal.

Plaintiff, however, has insurmountable hurdles arising under both Alabama law and the contract he signed, making the factual averments in the Complaint irrelevant to the disposition of this case, which is resolved by the settled law discussed in this motion. ADT and Plaintiff agreed that ADT would provide alarm monitoring services for a monthly fee of $27.81 pursuant to a contract that expressly precludes or limits ADT's liability. The plain language of the agreement between the parties, combined with the overwhelming weight of authority in this State and other jurisdictions, mandate a judgment in favor of ADT.

---

documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."); *Deerman v. Federal Home Loan Mortgage Corp.*, 955 F. Supp. 1393, 1397 (N.D. Ala. 1997).

## I.     FACTUAL BACKGROUND.

On or about October 28, 1999, Plaintiff's entered into a Commercial Sales Proposal/Agreement ("Agreement") with ADT to provide and install certain burglar alarm equipment and monitoring services at Gold Valley, located at 1003 B. Eastdale Mall, Montgomery, Alabama. *See* Agreement, attached as Exhibit A.[3] Monte Sabir, on behalf of Gold Valley, read and signed the Agreement. *Id.*   Just above the signature line on the front page of the Agreement, under the heading "Customer Acceptance", Monte Sabir acknowledged that all of the terms and conditions of the contract had been read, including those on the reverse side of the contract:

> **In accepting this proposal, customer agrees to the terms and conditions contained herein including those on the reverse side. It is understood that they shall prevail over any variation in terms and conditions on any purchase order or other document that the customer may issue.  Any changes in the system requested by the customer after the execution of this agreement shall be paid for by the customer and such changes shall be authorized in writing.**

*See* Agreement, p. 1.

The Agreement makes clear that ADT is not an insurance company covering a burglary and that insurance, if any, will be secured by Plaintiff.  Indeed, Plaintiff acknowledged that ADT is not an insurer and that the charges for the services rendered are based solely upon the value of these services and the limited scope of liability as reflected in the Agreement, and unrelated to the value of Plaintiff's property.  *Id.* at ¶ E.  Paragraph E of the Agreement states in pertinent part in bold and capital letters:

---

[3]     The Agreement is also attached as an exhibit to ADT's Answer and provides the basis for its affirmative defenses.  Further, it is implicitly relied upon in Plaintiff's Complaint, as it is the source of the duties discussed therein.  Therefore, it is an integral part of the initial pleadings and may be considered through this motion under Fed. R. Civ. P. 12(c).  *See* Fed. R. Civ. P. 10.

> **IT IS UNDERSTOOD THAT ADT IS NOT AN INSURER. THAT INSURANCE, IF ANY, SHALL BE OBTAINED BY THE CUSTOMER AND THAT THE AMOUNTS PAYABLE TO ADT HEREUNDER ARE BASED UPON THE VALUE OF THE SERVICES AND THE SCOPE OF LIABILITY AS HEREIN SET FORTH AND ARE UNRELATED TO THE VALUE OF THE CUSTOMER'S PROPERTY OR PROPERTY OF OTHERS LOCATED IN CUSTOMER'S PREMISES. CUSTOMER AGREES TO LOOK EXCLUSIVELY TO CUSTOMER'S INSURER TO RECOVER FOR INJURIES OR DAMAGE IN THE EVENT OF ANY LOSS OR INJURY AND RELEASES AND WAIVES ALL RIGHT OF RECOVERY AGAINST ADT ARISING BY WAY OF SUBROGATION.**

*Id.*

Because the parties agreed that ADT would not be a surrogate insurer of Plaintiff's property, and further agreed that the contract pricing correlates with the cost of the services supplied under the Agreement, not the value of Plaintiff's property, Paragraph E continues and contains a limitation of liability:

> **IT IS IMPRACTICAL AND EXTREMELY DIFFICULT TO FIX THE ACTUAL DAMAGES, IF ANY, WHICH MAY PROXIMATELY RESULT FROM FAILURE ON THE PART OF ADT TO PERFORM ANY OF ITS OBLIGATIONS HEREUNDER. THE CUSTOMER DOES NOT DESIRE THIS CONTRACT TO PROVIDE FOR FULL LIABILITY OF ADT AND AGREES THAT ADT SHALL BE EXEMPT FROM LIABILITY FOR LOSS, DAMAGE OR INJURY DUE DIRECTLY OR INDIRECTLY TO OCCURRENCES, OR CONSEQUENCES THEREFROM, WHICH THE SERVICE OR SYSTEM IS DESIGNED TO DETECT OR AVERT; THAT IF ADT SHOULD BE FOUND LIABLE FOR LOSS, DAMAGE OR INJURY DUE TO A FAILURE OF SERVICE OR EQUIPMENT IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $1,000, WHICHEVER IS GREATER, AS THE AGREED UPON DAMAGES AND NOT AS A PENALTY, AS THE EXCLUSIVE REMEDY; AND THAT THE PROVISIONS OF THIS PARAGRAPH SHALL APPLY IF LOSS, DAMAGE OR INJURY, IRRESPECTIVE OF CAUSE OR ORIGIN, RESULTS DIRECTLY OR INDIRECTLY TO**

4

**PERSON OR PROPERTY FROM PERFORMANCE OR NONPERFORMANCE OF OBLIGATIONS IMPOSED BY THIS CONTRACT OR FROM NEGLIGENCE, ACTIVE OR OTHERWISE, STRICT LIABILITY, VIOLATION OF ANY APPLICABLE CONSUMER PROTECTION LAW OR ANY OTHER ALLEGED FAULT ON THE PART OF ADT, ITS AGENTS OR EMPLOYEES.**

*Id.* (emphasis original).

Importantly, Paragraph E of the Agreement also provides that for an additional charge, ADT would have assumed a greater liability than that which otherwise would be applicable under the limitation of liability clause:

**IF THE CUSTOMER DESIRES ADT TO ASSUME A GREATER LIABILITY, ADT SHALL AMEND THIS AGREEMENT BY ATTACHING A RIDER SETTING FORTH THE AMOUNT OF ADDITIONAL LIABILITY AND THE ADDITIONAL AMOUNT PAYABLE BY THE CUSTOMER FOR THE ASSUMPTION BY ADT OF SUCH GREATER LIABILITY PROVIDED. HOWEVER, THAT SUCH RIDER AND ADDITIONAL OBLIGATION SHALL IN NO WAY BE INTERPRETED TO HOLD ADT AS AN INSURER.**

*Id.* (emphasis original).  Plaintiff, however, never elected to have ADT assume any greater liability than that set forth in the Agreement.  *Id.*

At some point on during the night hours of December 31, 2005 or early morning hours of January 1, 2006, Plaintiff's jewelry store was broken into and robbed.  On October 19, 2007, Plaintiff filed this action in the Circuit Court for Montgomery County, Alabama.  Plaintiff's Complaint seeks to disturb the risk-allocation structure agreed upon by the parties, and, as discussed below, is therefore subject to dismissal.  *See* Complaint.

## II.    MEMORANDUM OF LAW

Plaintiff has asserted one amalgamated claim sounding in tort; his single-count Complaint presents a hybridized claim for negligence and/or wanton negligence.  This Court

should enter a judgment on the pleadings in ADT's favor because Plaintiff cannot maintain a viable tort claim under the facts of this case. Briefly stated, the Court should enter a judgment on the pleadings in favor of ADT because: (1) Plaintiff cannot state a tort claim arising from a duty independent of the duties set for in the Agreement, (2) Plaintiff's claims are barred by the unambiguous exculpatory and limitation of liability provisions in the contract, (3) the allegations in Count I of Plaintiff's complaint do not state a plausible claim of willful and wanton negligence and/or fraud, thus are deficient as a matter of law. Alternatively, to the extent Count I of Plaintiff's Complaint purports to assert a fraud claim, it is deficient under FED. R. CIV. P. 9(b).

## A.    STANDARD FOR JUDGMENT ON THE PLEADINGS.

A judgment on the pleadings is appropriate under FED. R. CIV. P. 12(c) when there are no material facts in dispute, and a judgment may issue by considering the substance of the pleadings and any judicially noticed facts. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). "If upon reviewing the pleadings it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations, the court should dismiss the complaint." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002).

## B.    PLAINTIFF'S TORT CLAIMS ARE BARRED BECAUSE PLAINTIFF HAS FAILED TO ALLEGE THEM INDEPENDENT OF A BREACH OF CONTRACT.

The Agreement between Plaintiff and ADT is the sole source of the parties' relationship. This means that the duty to, *inter alia*, install, maintain and monitor the alarm system at Gold Valley Eastdale Mall, was a contract duty arising from the Agreement. ADT's duty would not have existed without the Agreement. Thus, Plaintiff has merely stated allegations of breach of contract under the guise of a hybridized negligence and wantonness claim. Specifically, Plaintiff alleges that ADT negligently and/or wantonly failed to install or maintain Plaintiff's alarm system, which they contracted to do. *See* Complaint, ¶ 12 (specifying alleged installation and

6

maintenance problems). Such claims do not involve duties arising under common law but, rather, are merely a statement of what Plaintiff expected to receive under the Agreement. Clearly, Plaintiff alleges mere unmet contractual expectations, as any such duty to install and maintain the alarm system **arises from the Agreement**. Consequently, Plaintiffs have failed to allege the existence of any duty breached by ADT that arises outside the express written contract between the parties.[4]

Under controlling Alabama law, a breach of an alarm services contract does not constitute a cause of action in tort. *See Amer. Dist. Tel. Co. of Ala. v. Roberts & Son*, 122 So. 837, 839 (Ala. 1929) (an action in tort cannot be maintained, where the alleged negligence consists in the failure to perform a contractual obligation). Alabama courts have consistently held that tort actions cannot be maintained where the alleged wrong amounts to the failure to perform a contractual obligation or mere unmet contractual expectations. *See Locke v. Ozark City Bd. of Educ.*, 910 So. 2d 1247, 1254 (Ala. 2005); *Barber v. Business Prods. Ctr.*, 677 So. 2d 223 (Ala. 1996); *Premier Industrial Corp. v. Marlow*, 295 So. 2d 396, (Ala. 1974) ("a mere failure to perform a contractual obligation is not a tort, and it furnishes no foundation for an action on the case.").

The same result has been reached in other jurisdictions. *See Spengler v. ADT Security Services, Inc.*, --- F.3d ----, 2007 WL 2873340 (6th Cir. Oct. 4, 2007); *Steiner Corp. v. American Dist. Tel.*, 106 Idaho 787, 789-90 (1984); *Aspell v. American Contract Bridge League*, 122 Ariz. 399, 595 P.2d 191 (App.1979); *Chavez v. Saums*, 571 P.2d 62 (Kan 1977); *Boise Cascade Corp. v. First Sec. Bank of Anaconda*, 600 P.2d 173 (Mont. 1979).

---

[4]     It is interesting to note that Plaintiff does not assert a claim for breach of contract. The only duties the parties owed to one another arise under the Agreement. Clearly, absent the Agreement, ADT had no common law duty to provide alarm services to Plaintiff.

01571214.1

*Spengler*, No. 06-2537, 2007 WL 2873340, another alarm case presenting precisely the same legal issue, is especially instructive. The plaintiff in *Spengler* filed a wrongful death action sounding in tort. The plaintiff had executed a residential services contract to install and monitor a security system at the home of his mother. The alarm system included a remote control panic button that would sound the alarm and cause an alarm signal to be transmitted to the ADT central monitoring station. One night, the alarm was activated via the remote control and the signal was transmitted to ADT's central monitoring station. However, upon its receipt of the signal, it was alleged that ADT dispatched emergency personnel to the wrong address causing a delay in their arrival at the decedent's address. Plaintiff alleged that the resultant delay was the direct cause of his mother's death.

The district court granted ADT's motion for summary judgment and the Sixth Circuit Court of Appeals affirmed. *Id.* at *2. The court held the duties at issue existed solely because of the contract between Spengler and ADT. *Id.* Plaintiff thus failed to state a legally cognizable tort action because the duty at issue was dependant upon, not independent of, the contract. *Id.*

Similarly, the plaintiff in *Steiner*, 106 Idaho 787, another alarm case, argued that it should be permitted to maintain a negligence action against ADT for negligently inspecting and maintaining the fire alarm system installed pursuant to a contract similar to the one here. In dismissing the plaintiff's negligence claim, the *Steiner* court quoted from 1 C.J.S. Actions §49(c), p.1112:

> The mere negligent breach or nonperformance of a contract will not sustain an action sounding in tort, in the absence of a liability imposed by law independent of that arising out of the contract itself... However, active negligence or misfeasance is necessary to support an action in tort based on a breach of contract; mere nonfeasance, even if it amounts to a willful neglect to perform the contract is not sufficient.

*Id.* at 790. The court went on to hold that:

> The actions alleged to have caused damage to Steiner were clearly acts of omission or nonfeasance. Steiner alleges that ADT failed to properly perform its duty to inspect and maintain the fire alarm system. Thus a clear duty must be shown to exist by operation of law, separate and apart from the contractual duty to maintain the equipment. It is clear from the allegations in this complaint that such a separate duty cannot be shown. Apart from this contract, ADT could not be said to have a duty to maintain equipment in Steiner Corporation's building.

*Id.* at 790-91.

As in *Roberts*, *Spengler* and *Steiner*, Plaintiff's claims in this case likewise fail to demonstrate a breach of a tort duty arising separate and apart from ADT's contractual obligations. Simply stated, the obligation to install or maintain the alarm system would not exist but for the Agreement. Therefore, ADT is entitled to a judgment as a matter of law on all of Plaintiff's claims, which sound exclusively in tort.

## C.    PLAINTIFF'S CLAIMS ARE BARRED BY THE LIMITATION OF LIABILITY PROVISIONS OF THE CONTRACT.

For decades, state and federal courts throughout this country have consistently acknowledged that risk allocation is essential to the alarm industry and the concomitant need for, and validity of, contractual limitations of liability contained in alarm service contracts. The cases are legion. *See also, e.g., E. H. Ashley & Co. v. Wells Fargo Alarm Services*, 907 F.2d 1274, 1278 (1st Cir. 1990); *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 49 (2d Cir. 1993); *Gill v. Rollins Protective Services Co.*, 722 F.2d 55 (4th Cir. 1983); *D.L. Lee & Sons v. ADT Sec. Sys. v. Mid South, Inc.*, 916 F. Supp. 1571 (S.D. Ga. 1995); *Am. Dist. Tel. Co. of Ala. v. Roberts & Son, Inc.*, 122 So. 837, 839 (Ala. 1929); *Central Alarm of Tucson v. Ganem*, 567 P.2d 1203, 1207 (Ariz. Ct. App. 1977); *Niccoli v. Denver Burglar Alarm, Inc.*, 490 P.2d 304 (Colo. Ct. App. 1971); *Bargaintown of D.C., Inc. v. Federal Engineering Co.*, 309 A.2d 56 (D.C. 1973); *Continental Video Corp. v. Honeywell, Inc.*, 422 So. 2d 35 (Fla. Dist. Ct. App. 3d Dist.

1982); *Steiner Corporation v. American District Telegraph*, 683 P.2d 435 (Idaho 1984); *General Bargain Center v. American Alarm Co.*, 430 N.E.2d 407 (Ind. Ct. App. 1982); *Corral v. Rollins Protective Services Co.*, 732 P.2d 1260 (Kan. 1987); *Alan Abis, Inc. v. Burns Electronic Security Serv., Inc.*, 283 So. 2d 822 (La. App. 2 Cir. 1973); *New England Watch Corp. v. Honeywell, Inc.*, 416 N.E.2d 1010 (Mass. App. Ct. 1981); *St. Paul Fire & Marine Ins. Co. v. Guardian Alarm Co.*, 320 N.W.2d 244 (Mich. 1982); *Morgan Co. v. Minnesota Mining & Mfg. Co.*, 246 N.W.2d 443 (Minn. 1976); *Shaer Shoe Corp. v. Granite State Alarm*, 262 A.2d 285 (N.H. 1970); *Eaves Brooks Costume Company v. Y.B.H. Realty Corp.*, 556 N.E.2d 1093, 1096 (N.Y. 1990); *Reed's Jewelers, Inc. v. ADT Co.*, 260 S.E.2d 107 (N.C. App. Ct. 1979); *Fretwell v. Protection Alarm Co.*, 764 P.2d 149 (Okla. 1988); *Wedner v. Fidelity Sec. Systems, Inc.*, 307 A.2d 429 (Pa. Super. Ct. 1973); *Ostalkiewicz v. Guardian Alarm, Div. of Colbert's Sec. Servs.*, 520 A.2d 563 (R.I. 1987); *Houghland v. Security Alarms & Services, Inc.*, 755 S.W.2d 769 (Tenn. 1988); *Schepps v. American Dist. Tel. Co.*, 286 S.W.2d 684 (Tex. Civ. App. Dallas 1955); *See also* Annotation, Validity Construction and Effect of Limited Liability or Stipulated Damages Clause in Fire or Burglar Alarm Service Contract, 42 A.L.R.2d 591 (Supp. 1995) (stating that "courts have been unanimous in declaring provisions [limiting liability] valid and citing cases from over 25 jurisdictions in support of this proportion").

Alabama courts agree. *Fox Alarm Co. v. Wadsworth*, 913 So. 2d 1070 (Ala. 2005); *See also Saia Food Distributors and Club, Inc., et al. v. Security Link From Ameritech, Inc.*, 902 So. 2d 46 (Ala. 2004).

In *Saia Food*, 902 So. 2d 46, the plaintiff/food distributor entered into a contract with ADT for alarm monitoring services at one of its buildings. The plaintiff alleged that he was instructed to arm the system by using a "bypass" button located on the control pad when the

10

system failed to function properly. While utilizing this "bypass" method, the plaintiff's building was burglarized and set on fire, but the appropriate authorities were not notified by ADT. Plaintiff filed suit against ADT and others alleging breach of contract, negligence, wantonness and promissory fraud.

Based on liability limiting provisions almost identical to the provisions at issue in the present case, the trial court held that plaintiff's breach of contract and negligence claims were "capped" at $5,800.00 (the purchase price of the equipment), and that plaintiff's claims for intentional, willful or wanton conduct were due to be dismissed for lack of evidentiary support. Plaintiff appealed the lower court's decision to the Alabama Supreme Court. After analyzing the history, purpose and enforceability of liability limiting provisions in security contracts, the Alabama Supreme Court affirmed the trial court's enforcement of those provisions:

> We agree that an installer of security equipment or a supplier of fire or security-monitoring services does not become an insurer of the property it is designed to help safeguard. Construing a security-equipment or security-monitoring contract as an insurance policy would render such a contract cost prohibitive.

*Id.* at 54. The Alabama Supreme Court also upheld the summary dismissal of plaintiff's intentional tort claims. *Id.*

Likewise, in *Fox*, 913 So. 2d 1070, the alarm company contracted with the plaintiff to provide alarm monitoring services to his auto parts store. After the installation of the alarm system, the shop was burglarized. Plaintiff sued the alarm company alleging fraud, negligence, wantonness, and breach of contract. The fraud, wantonness and breach of contract claims were dismissed by the trial court. At the close of its case, the alarm company requested a jury instruction limiting the potential damages to no more than $250.00 as agreed upon in the

01571214.1

limitation of liability clauses in the contract between the parties.[5] The trial court refused to give such an instruction and the jury returned a verdict for $200,000.00. The alarm company appealed arguing the damages should have been governed by the contract. The Alabama Supreme Court agreed with the alarm company and enforced the contractual provisions to reduce the damages from $200,000.00 to $250.00. *Id.* at 1077.

The Alabama Supreme Court and other courts have repeatedly declared provisions limiting liability as valid for a variety of sound policy reasons. As the cases above reflect, alarm services are fraught with risk and perpetually border potential loss and injurious events such as burglaries, fires, violent crime, medical emergencies and other unforeseeable events. As such, alarm companies are constant targets for plaintiffs seeking consequential damages for losses that are not caused by alarm companies. Unlike insurance companies, however, alarm companies base their charges solely on the cost of providing the service and not on the value of a customer's property or the risks involved. In this instance, ADT's charges for monitoring would have remained the same regardless of the value of Plaintiff's inventory. Obviously, the cost to insure such inventory would vary drastically depending on facts unknown to ADT. The full range of risks confronting an ADT client is unknowable to ADT because it is an alarm company, not an insurer.

The parties recognized this. In fact, the agreement clearly and unambiguously provides: **"IT IS AGREED THAT COMPANY IS NOT AN INSURER AND THAT THE PAYMENTS HEREIN ARE BASED SOLELY ON THE VALUE OF SERVICES HEREIN DESCRIBED ..."** (emphasis in original). (See Exhibit A at ¶ E). As between the customer, the customer's insurer, and ADT, it is clearly agreed by the parties that the risk of loss

---

[5]    The contractual language was nearly identical to that found in the Contract in this case between ADT and Plaintiff.

12

is to be borne by the customer's insurer. The above-quoted language, according to the Alabama Supreme Court, insulates alarm service providers such as ADT from the insurance-type risks that Plaintiff here seeks to impose. *See Fox Alarm Co.*, 913 So. 2d at 1076-1077; *Saia Food*, 902 So. 2d at 54; *see also Amer. Dist. Tel. Co. of Ala. v. Roberts & Son*, 122 So. 837, 839-41 (Ala 1929) (honoring clause in an alarm service contract by which the parties agreed that the alarm company would not insure against loss to the subscriber's property; court refuses to award damages for negligence beyond those permitted by liquidated damages clause); see also *St. Paul & Marine Ins. Co. v. Guardian Alarm Co.*, 320 N.W. 2d 244, 247 (Mich. App. Ct. 1982) (noting that alarm service contract stated that the alarm provider was not an insurer, the court underscored that, "[d]efendant is not in the insurance business. Rather [the contract] provides an alarm service for a specific sum. That sum is not a premium for theft insurance."); *Central Alarm v. Ganem*, 567 P.2d 1203, 1207 (Ariz. Ct. App. 1977) (holding that "it would be both unreasonable and unfair to expect [an alarm provider] to assume the responsibilities arising under a burglary insurance policy upon payment of a nominal [alarm service] fee.").

Notwithstanding the express language of the underlying contract and the modest monitoring fee called for under that contract, Plaintiff now looks to impose upon ADT the duties of an insurer. If the sound policies underlying the validity of limitation of liability clauses in alarm service contracts are not recognized, and the terms of Plaintiff's contract are not enforced, alarm service companies would be forced to charge exorbitant fees for the valuable services they provide. As a consequence, many consumers and businesses would no longer be able to afford such services, and many alarm service companies would go out of business.

Further, if such broad liability as that sought by Plaintiff was allowed, it would likely throw open the flood gates of litigation. More insurance companies would undoubtedly institute

13

suit to recover against the alarm service industry every time an insurer paid a fire loss or property damage claim brought by their insureds in accordance with the provisions of their insurance policies, irrespective of the fact that the insurance company received a handsome premium in exchange for undertaking the very risk for which the claim was paid. Adoption of the policy advanced by Plaintiff here would likely ring the death knell to the alarm service industry and deprive a significant portion of the population access to valuable security services, while at the same time only serving to provide a windfall to insurers that are paid substantial premiums yet seek recovery by way of subrogation claims.

Here, the contract between the parties contains clear, unambiguous limitation of liability clauses. Well-established case law from every state that has considered the enforcement of limitation of liability clauses in alarm company contracts has upheld such clauses. Indeed, *nine U.S. Circuit Courts have considered the enforceability of limitation of liability clauses in alarm companies' contracts and each one has strictly enforced them.*[6] *No circuit court has ever found such a clause to be unconscionable or against public policy.*

The parties agreed to limitation of liability provisions precluding any liability on the part of ADT under the circumstances alleged here. Alabama courts have held, as have courts in many other jurisdictions, that these limitation of liability provisions in alarm services contracts are enforceable and require dismissal of claims brought against alarm companies on negligence theories of liability as well as those based on breach of contract or warranty. *See Fox Alarm Co.,*

---

[6]   *See, e.g., Spengler v. ADT Security Services, Inc.,* --- F.3d ----, 2007 WL 2873340 (6th Cir. Oct. 4, 2007); *E. H. Ashley & Co. v. Wells Fargo Alarm Services,* 907 F.2d 1274 (1st Cir. 1990); *Leon's Bakery, Inc. v. Grinnell Corp.,* 990 F.2d 44 (2d Cir. 1993); *Krueger Assocs. v. Am. Dist. Tel. Co.,* 247 F.3d 61 (3d Cir. 2001); *Gill v. Rollins Protective Services Co.,* 722 F.2d 55 (4th Cir. 1983); *Robin Towing Corp. v. Honeywell, Inc.,* 859 F.2d 1218 (5th Cir. 1988); *Edwards v. Honeywell, Inc.,* 50 F.3d 484 (7th Cir. 1995); *Elsken v. Network Multi-Family Sec. Corp.,* 49 F.3d 1470 (10th Cir. 1995); *D.L. Lee & Sons v. ADT Sec.* Sys., 77 F.3d 498 (11th Cir. 1996) (affirming 916 F. Supp. 1571 (SD Ga. 1995)).

14

913 So. 2d at 1076-1077; *Saia*, 902 So. 2d at 54. *See also Amer. Dist. Tel. Co. of Ala. v. Roberts & Son*, 122 So. 837, 839 (Ala. 1929); *L, Luria & Son, Inc. v. Alarmtec International Corp.*, 384 So. 2d 947 (Fla. Dist. Ct. App. 4th Dist. 1980) (precluding action against alarm company on theories of negligence, gross negligence, and breach of warranty); *D.L. Lee & Sons, Inc. v. ADT Sec. Sys. v. Mid-South, Inc.*, 916 F. Supp.1571, 1579, 1580 (S.D. Ga. 1995) (ADT entitled to summary judgment on tort claims as well as contract claims).

Importantly, Alabama courts are hesitant to disturb contracts on public policy grounds. Indeed, "the usual and most important function of courts of justice is to maintain and enforce contracts rather than to enable parties thereto to escape their obligations" thereunder. *Alfa Specialty Ins. Co. v. Jennings*, 906 So. 2d 195, 199 (Ala. Ct. App. 2005). "The principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reason on which the doctrine rests." *Alfa Specialty Ins. Co.*, 906 So. 2d at 199. Moreover, the Alabama Supreme Court has noted that "many courts have cautioned against recklessness in condemning agreements as being in violation of public policy. Public policy, some courts have said, is a term of vague and uncertain meaning which it is the duty of the law-making power to define, and courts are apt to encroach upon the domain of that branch of government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law." *Milton Construction Co. v. State Highway Department*, 568 So. 2d 784, 788 (Ala. 1990).

To the extent enforceability of liability limiting clauses in alarm contracts was ever in doubt in this State, the Alabama Supreme Court definitively settled that question in *Fox* and *Saia*. The limitation of liability language in the Agreement bars or caps all Plaintiff's claims for

15

breach of warranty and negligence as they fall squarely within the enforceable liability limiting provisions of the operative contract.

**D.    TO THE EXTENT PLAINTIFF'S COMPLAINT PURPORTS TO ASSERT A CLAIM FOR WANTONNESS, THIS CLAIM FAILS THE PLAUSIBILITY REQUIREMENT OF *TWOMBLY*.**

Plaintiff's single-count, amalgamated tort claim appears to assert that ADT wantonly failed to install, maintain or monitor the alarm services equipment at issue.[7]  However, the use of conclusory language and adjectives does not transform an ordinary contract action into something more.  At the outset of a case, in order for the plaintiff to satisfy his "obligation to provide the grounds of his entitlement to relief," he must allege more than "labels and conclusions"; his complaint must include "[f]actual allegations [adequate] to raise a right to relief above the speculative level." *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (citations omitted); *see also Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1973 (2007) (reminding that conclusory statements do not state a cause of action and holding a complaint must plead "enough facts to state a claim to relief that is plausible on its face").  "Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief'" on each element of the claim.  *Id.*  Plaintiff's bare assertions of "wantonness," amounting to nothing more than unmet contract expectations embellished with adjective, are the very claims *Twombly* proscribes.[8]

In order to prevail on a wantonness claim under Alabama law, a plaintiff must prove by clear and convincing evidence that the defendant was consciously aware that doing or omitting a

---

[7]    Because Plaintiff's tort claims are deficient as a matter of law for want of any separate tort duty, the Court need not reach the latter two issues in this Motion.  Insofar as the Court disagrees, such claims are also subject to dismissal for the reasons briefed in this section.

[8]    This also applies to Plaintiff's "fraud" claim, to extent one is asserted.  While "fraud" is included in the heading of the sole count in Plaintiff's Complaint, no factual allegations of fraud are made in the body of this count.  Thus, it appears Plaintiff is not actually asserting a fraud claim.

16

particular act would likely or probably result in injury. *Stone v. Southland Nat'l Ins. Corp.*, 589 So. 2d 1289, 1292 (Ala. 1991). The statutory definition of wantonness under Alabama law is "conduct that is carried on with reckless or conscious disregard of the rights or safety of others." §6-11-20(b)(3) Ala. Code (1975). If the plaintiff cannot prove that the defendant knew that injury was a likely or probable result of the defendant's actions, then the defendant is entitled to summary judgment on the wantonness claim. *See Mead Coated Bd. v. Dempsey*, 644 So. 2d 872, 875 (Ala. 1994); *Coca-Cola Bottling Co. United v. Stripling*, 622 So. 2d 882, 884 (Ala. 1993). The Eleventh Circuit Court of Appeals, applying Alabama law, explained the distinction between wantonness and negligence. Quoting the court, "wantonness means knowledge that an act or failure to act does not merely increase risk of injury, but that the act makes the injury likely or probable." *Toole v. McClintock*, 999 F.2d 1430 (11th Cir. 1993).

In this case, Plaintiff's blanket allegations, even if presumed true, fall woefully short of stating a plausible wantonness claim under *Twombly*. Plaintiff's contentions amount to nothing more than unmet contractual expectations. Under *Twombly*, this in no way supports a claim of wantonness, particularly when weighed against the allegations in similar cases from other jurisdictions, which have dismissed such claims. Indeed, the very wantonness claim alleged by Plaintiff has been specifically addressed by other courts, which have held that allegations of improper maintenance or installation of alarm service equipment does not, as a matter of law, exhibit the recklessness necessary to release a party from a limitation of liability provision within an alarm services agreement. *See Colnaghi, U.S.A. Ltd. v. Jewelers Protection Services, Ltd.*, 611 N.E. 2d 282, 284 (N.Y. 1993) (limitation of liability clause precluded a gross negligence claim alleging alarm service company failed to install protective wiring around a museum skylight through which burglars entered and stole paintings, stating "the failure to wire a

17

skylight, while perhaps suggestive of negligence or even gross negligence as used elsewhere, does not evince the recklessness necessary to abrogate [plaintiffs'] agreement to absolve [defendant] from negligence claims."); *Stuart Rudnick, Inc. v. Jewelers Protection Servs.*, 194 A.D.2d 317 (N.Y. 1993) (limitation of liability clause precluded gross negligence claim alleging alarm service company failed to maintain in working order a video camera supervising safety deposit boxes in which plaintiffs' jewelry was stored, and held "the conduct in this case, while clearly negligent, and even grossly negligent as used in other contexts, does not meet this standard."); *Advance Burglar Alarm Systems, Inc. v. D'Auria*, 110 A.D.2d 860, 861-863 (N.Y. App. Div. 2d Dept 1985) (where the landowner alleged that the alarm company equipment "was negligently installed and maintained and functioning improperly," the court held that such allegations amounted to "only ordinary negligence, thus negating the argument that there is an issue of fact as to whether the alleged breaches fall within the ambit of the limitation of liability clause.").

Plaintiff should not be permitted to circumvent the limitation of liability clauses of the Agreement simply by adding a baseless claim of wantonness to the Complaint. Under the principles announced by the Supreme Court in *Twombly*, and the above authority, ADT's motion for judgment on the pleadings should be granted, as Plaintiff's claim of "wantonness" predicates on a contract claim sensationalized by adjectives.

E.    **PLAINTIFF'S "FRAUD" CLAIM FAILS TO SATISFY RULE 9(B) AND IT IS DUE TO BE DISMISSED, OR, AT A MINIMUM, PLAINTIFF SHOULD BE REQUIRED TO RE-PLEAD THIS CLAIM WITH MORE PARTICULARITY.**

As discussed above, while the heading of Plaintiff's single cause of action lumps a "fraud" claim together with negligence allegations, it appears that no fraud claim is being advanced, as no factual allegations supporting such a claim are set forth in the Complaint. *See*

18

Complaint, Count I. But to the extent Plaintiff intends to bring a fraud claim, and to the extent such claim is not deficient for the reasons already discussed above, Plaintiff's claim is deficient under FED. R. CIV. P. 9(b) and should be dismissed with prejudice.

To state a cognizable fraud claim, Rule 9(b) requires that the complaint set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007).

Here, there is no attempt to meet these requisites. *See* Complaint. Thus, while deficient for the many reasons already discussed, any "fraud" allegations in the Complaint must be dismissed for failure to satisfy FED. R. CIV. P. 9(b). At a minimum, if the fraud claim is not dismissed, this Court should require the Plaintiff to provide a more definite statement of its claim.

## CONCLUSION

Established law mandates that this Court enforce the clear and unambiguous terms of the Agreement. Because (1) Plaintiff can not state a tort claim independent of the contract between Plaintiff and ADT, (2) Plaintiff's claims are barred by the unambiguous terms of the Agreement, (3) the allegations in Count I of Plaintiff's complaint do not state a plausible claim of willful and wanton negligence and/or fraud, thus are deficient as a matter of law. Alternatively, to the extent Count I of Plaintiff's Complaint purports to assert a fraud claim, it is deficient under FED. R. CIV. P. 9(b), ADT's Motion to Dismiss, or Motion for More Definite Statement should be granted.

_John A. Earnhardt_
John A. Earnhardt
Robert H. Fowlkes
Attorney for ADT Security Services, Inc.

OF COUNSEL:

MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama 35203-2602
(205) 254-1000

01571214.1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document has been served via US Mail or by using the CM/ECF system properly addressed this 30ᵗʰ day of _November_, 2007:

Jim L. Debardelaben, Esq.
Attorney at Law
P.O. Box 152
Montgomery, Alabama 361010-0152
ATTORNEY FOR PLAINTIFF

_Robert H. Forbes_
Of Counsel

01571214.1

# Exhibit A

# ADT

**COMMERCIAL SALES PROPOSAL/AGREEMENT**

ADT Security Services, Inc.

3/8

*Relocation*
*"Existing ADT Customer"    National Account*    DATE 10/28/99

ADT Security Services, Inc. ("ADT")

501 Adams Avenue
Montgomery, AL 36104

Tel. No. (334) 834-4109

To: (Customer Name and Address)

Gold Valley
1003 B. EastdAle Mall
Montgomery AL 36117
(334) 279-7564

Attn: Monte Sapir Tel. No.

ADT proposes to install or cause to be installed the equipment and furnish the services indicated herein:

| QTY | DEVICE DESCRIPTION | ZONE | DEVICE LOCATION |
|---|---|---|---|
| 1 | Control Panel | | |
| 1 | Keypad | | |
| 1 | Motion Sensor | | Counter (Behind |
| 1 | Motion Sensor | | Counter Area (Front) |
| 1 | Door Contact | | For Right Rollup |
| 1 | Door Contact | | Front Middle Rollup |
| 1 | Door Contact | | For Left Rollup |
| 1 | Door Contact | | Back Door |
| 1 | Inside siren | | |
| 1 | Telco Jack | | |
| | | | |
| | | | Bill to: |
| | | | Address Above |

**Type of Transaction**

☐ Direct Sale (equipment to become property of the Customer upon payment of Selling Price indicated below in full).

☑ System to remain property of ADT.

ADT may remove or upon written notice to the Customer, abandon in whole or in part, all devices, instruments, appliances, cabinets, and other materials associated with the system, upon termination of this agreement, without obligation to repair or redecorate any portion of the Customer's premises upon such removal, and the removal or abandonment of such materials shall not be held to constitute a waiver of the right of ADT to collect any charges which have been accrued or may be accrued hereunder.

**Services To Be Provided** — P - Provided / NP - Not Provided (Circle One)

| | | |
|---|---|---|
| Central Station Signal Receiving and Notification Service ☐ Fire Alarm ☐ Hold Up Alarm ☐ Burglar Alarm ☐ Duress ☐ Supervisory ☐ Other____ | P | NP |
| Direct Connection Service To____ Using ☐ Digital Communicator ☐ Leased Line ☐ Derived Local Channel | P | NP |
| Telephone Charges Not Included in ADT Billing | P | NP |
| Maintenance | P | NP |
| Inspections Number per Year | P | NP |
| Investigator Response ☐ Interior ☐ Exterior | P | NP |
| Supervised/Scheduled Opening/Closing | P | NP |
| Opening/Closing Logging | P | NP |
| Opening/Closing Reports | P | NP |
| Other | P | NP |

Customer acknowledges that: (a) ADT has explained the full range of protection, equipment, and services available to Customer; (b) additional protection over and above that provided herein is available and may be obtained from ADT at an additional cost to the Customer; and (c) Customer desires and has contracted for only the equipment and services itemized on this Agreement.

For the sum of $ 110.00 payable upon acceptance of this proposal and the balance payable upon completion of the installation and as a precondition to activation of the system and, if applicable, connection to central station or direct connection service. In addition, the service(s) to be provided as indicated above, Customer agrees to pay

$ _____ per annum, annually in advance for a period of five years effective from the date service is operative under this agreement. After the five years, this agreement shall be automatically renewable yearly unless terminated by either party upon written notice at least 30 days prior to the anniversary date.

Customer warrants that the Customer: (1) has requested the equipment/services specified in this Agreement for its own use and not for the benefit of any third party, (2) owns the premises in which the equipment is being installed or that Customer has the authority to engage ADT to carry out the installation in the premises and (3) will comply with all laws, codes, and regulations pertaining to the use of the equipment/services.

**Customer Acceptance**

In accepting this Proposal, Customer agrees to the terms and conditions contained herein including those on the reverse side. It is understood that they shall prevail over any variation in terms and conditions on any purchase order or other document that the Customer may issue. Any changes in the system requested by the Customer after the execution of this Agreement shall be paid for by the Customer and such changes shall be authorized in writing.

**ATTENTION IS DIRECTED TO WARRANTY, LIMIT OF LIABILITY, AND OTHER CONDITIONS ON REVERSE SIDE.**

By _____ Agent

Approved _____ Authorized Representative of ADT

Title _____

Form 3081-01 (9/97)

LOCAL OFFICE FILE

TERMS AND CONDITIONS